**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **SUZANNE ROTHMAN** | § | |
| *Plaintiff,* | § | |
| **v.** | § | **C.A. No. _____** |
| **CYPRESS-FAIRBANKS** | § | |
| **INDEPENDENT SCHOOL DISTRICT,** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

COMES NOW, Plaintiff **SUZANNE ROTHMAN**, and files this "Plaintiff Original Complaint" ("Complaint") as follows against the above-named described Defendant and respectfully shows as follows:

### A.     NATURE OF SUIT

1.     Plaintiff Suzanne has been the victim of ongoing discrimination in her workplace based on Plaintiff's age, disabilities, ethnicity, gender, and expression of her First Amendment rights, which in the aggregated resulted in (a) continuous retaliation and targeting of Suzanne and the creation of a hostile and unsafe work environment, and (b) the violation of her Constitutional Protections (defined hereafter). After endless and futile reporting attempts to stop the Civil Rights

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                                 1
Glaw 2019.06.14

Violations (defined hereafter) targeted at Suzanne, Plaintiff now files this Complaint for relief pursuant to various Federal statutes set forth hereafter.

## B.   PARTIES

2.     Plaintiff **SUZANNE ROTHMAN** ("Suzanne") is a female individual residing in the State of Texas, who has devoted a life to advocating for the safety and academic welfare of children.

3.     Defendant **CYPRESS-FAIRBANKS INDEPENDENT SCHOOL DISTRICT** ("Cy-Fair") is a school district formed under the laws of the State of Texas, operates numerous schools in Harris County, and has its official administrative location in Harris County, Texas. Defendant Cy-Fair may be served with summons by serving its superintendent as follows:

**Cypress-Fairbanks Independent School District**
**Mark Henry, Superintendent**
**10300 Jones Road**
**Houston, Texas 77065**

## C.   JURISDICTION and VENUE

4.     The jurisdiction of this Court is invoked pursuant to 28 U. S. C. § 1331 as involving a *federal question* proceeding arising under the following statutes of the United States:

      a)    42 U.S.C. Sections 6101-6107), being the Age Discrimination in Employment Act of 1967 (Pub. L. 90-202) ("ADEA");

**PLAINTIFF'S ORIGINAL COMPLAINT**

Glaw 2019.06.14

b)   Americans With Disabilities Act of 1990, Pub. L. No. 101-336, § 1, 104 Stat. 328 (1990), as amended, Sections 1 and 2 hereafter the ("ADA");

c)   42 U. S. C. § 2000e et seq. (Title VII of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991, as well as to 28 U. S. C. § 1343 ("Title VII");

d)   42 U. S. C. § 2000e *et seq.* (Title VI of the Civil Rights Act of 1964), as amended by the Civil Rights Act of 1991 ("Title VI");

e)   29 U.S.C. §§2601 *et seq.*, being the Family and Medical Leave Act ("FMLA");

f)   Section 504 of the Rehabilitation, Comprehensive Services, and Developmental Disabilities Act of 1978, 29 U.S.C. § 794 ("Section 504"); and

g)   42 U.S.C. § 1983 ("Section 1983") with regards to:

(i)   Defendant's violations of the laws of the United States; and

(ii)   Defendant's denial (under the color of law) of Plaintiff Suzanne's equal protection, procedural due process violations, and substantive due process rights granted by the Fourteenth Amendment to the U.S. Constitution; and

(iii)   Defendant's denial (under the color of law) of Plaintiff Suzanne's freedom of expression and assembly rights granted by the First Amendment to the U.S. Constitution, and

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                            3

h)  Defendant's actions in violations of provisions of the Texas Constitution.

5.  This Court may further exercise supplemental jurisdiction over plaintiffs' claims arising under Texas law pursuant to 28 U.S.C. § 1367.

6.  Venue is proper in the Southern District of Texas (Houston Division) because the administration of Defendant Cy-Fair is operated from within Harris County, Texas which is within the Houston Division of the Southern District of Texas.

## D.  FACTUAL ALLEGATIONS

7.  Plaintiff Suzanne is a female of Hispanic heritage ("Hispanic") and, as of the filing of this Complaint, is 46 years old.

8.  Plaintiff Suzanne has been an employee within schools in the State of Texas beginning in 2009.

9.  Prior to transitioning into education, Plaintiff Suzanne had been a police officer with the City of Houston Police Department.

10. Plaintiff Suzanne began working as an educator with Defendant CY-FAIR in May of 2010 as the sole Middle School English Language Arts and ESL Teacher for ALC-West.

11.    Defendant CY-FAIR receives grants and other funding from the United States, and ALC-West is an alternative disciplinary and educational campus ("DAEP") within Defendant Cy-Fair.

12.    As set forth on the Cy-Fair website, the "Purpose" of the DAEP program ALC-West is:

> "To provide an Alternative Educational placement for the 6th-12th grade student who is not benefiting from his/her present program at the home school due to continued disruptive behavior and/or violation of school policies which could potentially result in a recommendation to the Board for expulsion."

13.    As set forth on the Cy-Fair website, Defendant Cy-Fair's "Mission" of the DAEP program ALC-West is provide a campus where:

> "The staff of the Alternative Learning Center emphasizes positive growth in social and emotional behaviors and attitudes through academic achievement.  As a result of academic and behavioral successes, the student will improve decision making and problem solving skills."

14.    With Plaintiff Suzanne's background as a former police officer being combined with Suzanne's passion to educate students, Suzanne was truly and deeply excited with her new position at the DAEP program at ALC-West.

15.     When Plaintiff Suzanne began with the DAEP program at ALC-West in 2010, the administrative team had a priceless amount of DAEP experience and held high expectations for the staff (including Suzanne). Consistent and thorough trainings were provided, with true transparency in topics relevant to ALC-West's student population including:

   a)     identifying and stopping prostitution;

   b)     gang activity, which was party addressed by a stringent and enforced dress code;

   c)     possessive relationships;

   d)      child abuse & runaways;

   e)     oppositional defiant behavior;

   i)     emotionally disturbed students; and

   g)     narcotics abuse.

16.     From May 2010 through August 2012, the administrative team of the DAEP program at ALC-West yielded remarkable success notwithstanding a large influx of students who were otherwise considered "unteachable."

17.     During the forgoing time period, Plaintiff Suzanne was considered to be one of the best teachers within the DAEP Program at ALC-West with valuable expertise and the ability to build genuine relationships with at-risk students who

arrived daily, helping such at-risk students grow both academically and behaviorally.

18.     Unfortunately for the students and staff of ALC-West (including Plaintiff Suzanne), everything that had successfully impacted students and the staff morale within the DAEP program at ALC-West started to change in August 2012 when Defendant Cy-Fair hired Stacie Wicke ("Wicke") as the new principal for ALC-West, as well as different administrators brought in by Wicke.

19.     What began as modest changes within Defendant Cy-Fair with regards to its DAEP program at ALC-West developed into a living and unsafe environment by 2018, which occurred with knowledge of the administrators of ALC-West, the Superintendent, Mark Henry ("Henry"), and, most probably the Board of Trustees of Defendant Cy-Fair ("Board").

20.     Upon information and belief, Defendant Cy-Fair had been criticized by the Texas Education Agency ("TEA") for sending too many minority students to Defendant Cy-Fair's DAEP program for extended periods of times.

21.     Wicke showed Plaintiff Suzanne, and other educators at ALC-West, a video of Cy-Fair Board Member John Ogletree speaking to other Cy-Fair Board

members, at a Cy-Fair Board meeting,  as to the expectation of reducing minority discipline numbers by 50%.

22.    Defendant Cy-Fair then mandated teachers and staff that discipline numbers of African American males and females and Hispanic males must be decreased by 50% as directed by the Defendant Cy-Fair School Board.

23.    In an effort to meet the 50% goal, Defendant Cy-Fair changed its DAEP rules, establishing a thirty to forty-five day time limit as the longest, *contentions* time a student could be sent to the DAEP programs. What developed was a failed and dangerous "Revolving-Door" arrangement, whereby students would be sent to DAEP for the thirty days, return to the Home Campus classroom, be re-sent to DAEP for thirty days, return to the Home Campus classroom, be-resent to DAEP therefore creating volatile recidivism.

24.    The Revolving Door arrangement for DAEP failed the students sent to DAEP and created an extremely dangerous workplace for the DAEP teachers (such as Plaintiff Suzanne) resulting in the at-risk students assigned to DAEP, as well as the educators at the DAEP program at ALC-West (including Plaintiff Suzanne) being exposed to:

> a)    an increased ingestion of narcotics, some resulting in overdoses;

**PLAINTIFF'S ORIGINAL COMPLAINT**                                              8
Glaw 2019.06.14

b)    an escalation in student assaults;

c)    an escalation in student threats to staff;

d)    student prostitution;

e)    human trafficking identifiers;

f)    gang recruitment and activity;

g)    drug activity and purchases with large sums of money;

h)    severe bullying;

i)    low self-esteem and cutting;

j)    a lack of deserved academic growth with failing grades;

k)    a disruptive learning environment;

l)    serious and tragic crimes in the community;

m)    intimidation by known visitors, including some felons;

n)    an increase in significant student criminal mischief on campus;

o)    compromised STAAR testing rooms;

p)    and inappropriate staff relationships.

25.    Despite Plaintiff Suzanne's commitment to student welfare and campus safety, good faith reports and grievances by Suzanne, Defendant Cy-Fair

ISD did nothing to prohibit the severe harassment of Suzanne resulting in an unsafe workplace many have described as "toxic work environment" as Suzanne and other staff were exposed to:

a)   increased threats by students embolden by lack of rules being enforced;

b)   Morning Search and Search for Tardy students not conducted thoroughly and sometimes not at all;

c)   Administrators allowing disgruntled Felons to visit campus;

d)   Administrators solidifying to young students that the adult staff member is the problem not such student's own behavior in contrast to Student Code of Conduct;

e)   Administrators enabling numerous students to believe that hat Suzanne instigates and provokes improper student behavior;

f)   Administrators refusal to support written policy and undermine teachers authority in front of students;

g)   False accusations and fabricated write-ups;

h)   Administrators monitoring (on office cameras) Suzanne and any staff who spoke to Suzanne;

i)   Administrators directing staff not to talk to one another;

j)   Administrators' failure to notify staff when a student was assigned to DAEP for an assault on a teacher or the student commission of a felony;

k)      Administrators refusal to investigate serious claims and documentation which ultimately resulted in students' arrest;

l)      Administrators rewarding serious negative behaviors immediately after such behavior occurred i.e. chips, one hundred school dollars, which therefore led to more disruption when student returned to class;

m)      Administrators not assigning correct discipline or intervention, sending irate students who needed time to calm down immediately back into class;

n)      Administrators ignoring serious negative behavior in Morning Search and sending students to class anyhow which always led to an escalation of the problems;

o)      Administrators picking and choosing what school rules, procedures, and policy said administrators would use or support on any given day;

p)      Administrators' refusal to train staff on safety and procedures related to a DAEP;

q)      Administrators' insistence that the administration did train staff when in actuality the administration had not;

r)      Administrators intimidating threats that the DAEP would be shut down if staff could not decrease discipline documentation of minorities;

s)      Administrators' refusal to support and intervene in STAAR compromised testing rooms, therefore compromising teaching licenses;

t)     an increase in staff absences;

u)     a revolving door of administrators and staff;

v)     Administrators pressure to staff to utilize only the "Open Door Policy" and not email concerns at the administration;

w)     Administrators pitting staff against one another including favoritism to some staff who were given lighter workloads or positions where such staff would have significantly less interaction with students, therefore less to document or see making those with a heavier workload seem like the bad guys;

x)     Morale at an unheard of low; and

y)     Some staff members having lesson plans graded while the favorites (among the educators) did not get graded and often did not follow lesson plan protocol.

26.    For Plaintiff Suzanne, the Revolving Door arrangement created and implemented by Defendant Cy-Fair resulted in Suzanne being physically assaulted by a Cy-Fair student, ignored by the administrations, suffering retaliation against Suzanne because Suzanne spoke opening about the unsafe working conditions being created, and ultimately resulted in Suzanne being diagnosed with Post Traumatic Stress Syndrome, depression, and anxiety ("Disabilities") in June 2018.

27.    Notwithstanding Plaintiff Suzanne's Disabilities, and at times, because of her Disabilities, combined with Defendant Cy-Fair's discriminatory

acts and omissions directed at Suzanne because of her age, Disabilities, ethnicity, gender, and expression of her First Amendment rights, in the aggregate resulted in Civil Rights Violations targeted at Suzanne and created a very hostile and extremely unsafe work environment for Suzanne and others.

28.     As set forth hereafter, the Civil Rights Violations directed at Plaintiff Suzanne by Defendant Cy-Fair was implemented by various administrators and representatives of Defendant Cy-Fair, including but not being limited to the following:

a)     Stacie R. Wicke, principal of ALC-West;

b)     Mark Henry, Superintendent;

c)     Marney Collins Sims, general counsel for Defendant Cy-Fair;

d)     Chrissy Reyna, Director of Instruction;

e)     Jill Smith, Human Resources Director;

f)     Edith Hamilton, Mentor and Fill-In Principal;

g)     Travis Fanning, assistant-superintendent;

h)     William Robinson, assistant principal;

i)     Carolyn Draper; school counselor;

j)      Courtney Waters; Assistant Principal; and

k)      Katy Corbett, Director, Human Resources.

29.     Specific examples of the discrimination inflicted upon Suzanne by Defendant Cy-Fair as a result of Suzanne's age, Disabilities, gender, ethnicity, and Suzanne's exercise of Suzanne's rights to express complaints and seek better working conditions for herself and others include but are in no manner limited to the following actions and omissions, which are grouped in various categories but obviously also apply to other categories herein as well as the category cited:

    a)      **physical assaults or increased aggression towards Plaintiff Suzanne by the students:**

        i)      list any and every time that a student touched you, shoved you, grabbed anything out of your hands, act;

        ii)     E. M., 6th grader, struck Suzanne's right arm with full force causing burning and pain for days when Suzanne began removing innocent students from class and tried to call for help as said student tore up the room;

        iii)    J., 9th grader, pulled out his shirt and clenched his fist bouncing up and down while walking towards Suzanne and ripped a level sheet from Suzanne's hand, with no consequences being suffered by said student;

        iv)     J., 6th grader forcefully knocked Suzanne's teacher clipboard out of Suzanne's hands;

     v)     O.S., 9th grader, walked up to Suzanne, without cause, brushed past Suzanne intentionally touching Suzanne's shoulders;

     vi)     P.C., 8th grader, being a known gang member, took a binder Suzanne's hand while accusing Suzanne getting said student "fried again" if such behavior documented;

     vii)     E.P. 10th grader walked toward Suzanne and called Suzanne a bitch (gang family and Suzanne had reported his brother for gang activity);

     viii)     C. approached Suzanne aggressively, staring forcing Suzanne to create distance and retreat; and

     ix)     E.P., 7th grader, threw a pencil at Suzanne.

**b)**     **Threatened by students:**

     i)     O.S., 9th grader, made a gun gesture at Suzanne and said Suzanne would get "popped.";

     ii)     I.F., 9th grader, ran around the building looking for Suzanne screaming "bitch;"

     iii)     I.F., 8th grader, shook the door handles of Suzanne's class was going on stating Suzanne could piss the fuck off;

     iv)     I.F., 8th grader, angry that Suzanne had to document his behavior, responded that it is fun to bash peoples teeth into the curb;

v)   California student L., 8th grader, stood up, clenched fist and threatened to come at Suzanne; and

vi)   D.G., 10th grader,  threatened to hurt Suzanne.

c)   **stalked by administrators:**

i)   Principal Wicke at Suzanne's door on numerous occasions, guarded the classroom door at 7 a.m. [Over time, it became clear that the foregoing was a method of operation after Suzanne had filed a grievance, sent an email advocating for safety, or to prevent staff from seeking Suzanne's help;

ii)   Suzanne's restroom breaks were monitored by administrators;

iii)   Principal Wicke would often run after Suzanne as Suzanne was entering the restroom only to watch Suzanne enter;

iv)   Assistant Principal Robinson listened to Suzanne and monitored Suzanne from a classroom next to mine which was turned into a storage room

v)   Principal Wicke took me out of instructional time to visit Cy Lakes High School without explanation (subsequentially refereed to by other educations as the "kidnapping")

vi)   Suzanne was asked to Sub for a class and Principal Wicke came in to give me an observation which is unheard of as these were not Suzanne's normal students;

vii)   Suzanne was given observations the day before or just after Holidays;

viii)   Principal Wicke refused to assign Suzanne other appraisers other than herself or Chrissy Reyna would;

ix)   Chrissy Reyna often stopped in her tracks around the corner/out of eyesight to listen to Suzanne's conversations;

x)   Once I approached Chrissy Reyna, she near Suzanne, pretending to "tie her shoe" but she had no laces;

xi)   Numerous coincidences (maybe from computer listening device) where Principal Wicke or Chrissy Reyna would show up or pop into Suzanne's room abruptly, looking around as though they had never seen light;

xii)   The on campus cameras and monitoring system was controlled by Wicke, and Wicke assigned only trusted confidents to monitor Suzanne and whomever spoke to me;

xiii)   Wicke ran out of a meeting once and literally accused Suzanne of, "I know you think the students all have long rap sheets;"

xiv)   Chrissy Reyna would also randomly show up around Suzanne to question Suzanne about things like goal-setting, but the timing was always after a false accusation by administration had made towards Suzanne; and

xv)   Chrissy Reyna repeatedly called Suzanne in or questioned Suzanne (after Suzanne had voiced concerns) whether Suzanne had received certificates for Suzanne's Professional

Development even though Reyna was clearly looking at the human resources server stating Suzanne had;

d) **racial insults and commentary or mistreatment due to Suzanne's Hispanic Heritage:**

    i)      in teacher lounge, Wicke made a comment about her breast after staring at Suzanne's saying Wicke was not lucky enough and Wicke had inherited her small breast from her mom;

    ii)     Wicke would comment out of the blue that Suzanne's hair was perfect and a perfect color;

    iii)    Wicke would often tell Suzanne "we are so much alike" which made me so uncomfortable since Suzanne and Wicke are as different as night and day;

    iv)    Wicke would often make comments that seemed condescending about Suzanne's clothes; how blinding Suzanne's highlighter tennis shoes were, and how bright orange Suzanne's blouse was;

    v)     Courtney Waters told Suzanne that Suzanne needed to understand the culture of why students do the things the students do to deflect from supporting the negative behavior; and

    vi)    Chrissy Reyna told Suzanne that Reyna often wondered why "minority moms" often thought it a priority to buy their sons expensive shoes, and, then Rayna asked me if Suzanne knew why;

e)    **age:**

    i)    Wicke stated in staff meetings and to Suzanne that older staff can be difficult to work with or are scared of change;

    ii)    Suzanne was replaced with a young male teacher;

    iii)    Wicke referred to the staff members who opened the building, including Suzanne, as "You People;"

    iv)    Reyna often monitored closely the older staff members including Suzanne especially in staff meetings;

    v)    Suzanne and other older staff have either been treated unfairly or been asked by Wicke questions to the effect of "where do you fit here" (i.e. Theresa Pampell, Phyllis Roquemore, Marcus Falleaf);

    vi)    The counselor position was saved for Carolyn Draper who is younger  and apparently more moldable, referred to Principal Wicke as "a blessing;" and

    vii)    An increase of inappropriate teacher-student relationships have skyrocketed within Defendant Cy-Fair due to Defendant Cy-Fair's emphasis on hiring younger, inexperienced and moldable teachers who are not capable of managing classrooms.

    For example, ALC-W alone has had a female teacher braiding a middle school boys hair daily, a male teacher gifting a necklace to female student,

**PLAINTIFF'S ORIGINAL COMPLAINT**            19

Glaw 2019.06.14

a male high school student telling a female teacher to pop that fine ass up (sit on desk during a presentation), male students stalking and threatening young female staff, inappropriate comments and videos shown by male teachers.

f)   **gender:**

i)   A male teacher often arrived late with two Starbucks coffees and was given "special permission" by Wicke and Chrissy Reyna to arrive late to work while his students were unsupervised while Suzanne, who was on approved family leave, was not;

ii)   The foregoing male teacher also gave Chrissy Reyna at least one gift card and rarely had to teach class or have lesson plans; and

iii)   Another male teacher gave Wicke barbeque sandwiches because Wicke would leave him alone;

g)   **the utilization of *trumped-up* investigations and reprimands as a form of intimidation:**

i)   Wicke told Suzanne responded to Suzanne's dress code question with: "keep your mouth shut if you want to keep the dress code…we are gonna make people mad if we keep talking about it…this building is expensive to run…";

ii)   Wicke would often state Wicke would hate to cut out any staff but the district may be headed in that direction;

iii)   Reyna and Waters accused Suzanne of having the highest call volume in the building and the highest

number of referrals yet did not show any evidence such referrals when Suzanne asked for evidence;

iv) Reyna told staff members not to write discipline referrals;

v) Wicke told the staff that home campuses are saying: if a student is going to sit in DC at ALC, why have an ALC and how this might affect Suzanne's, and others, jobs;

vi) Wicke insisted that the staff use Wicke's open door policy and not to send emails with concerns;

vii) Wicke called Suzanne to a meeting in which three administrators grilled Suzanne until evening/night hours on everything from judging Wickes character to being too paranoid to work at ALC-West administration through 6 pm;

viii) Wicke became angry that Suzanne would not drop a grievance, or, postpone the grievance because Suzanne choose to have a member of human resources present to hear the grievance;

ix) Hamilton dismissed Suzanne's report of lewd behavior to ask Suzanne what time Suzanne left work and whether that was Suzanne's normal time to leave and was that not too early;

x) Waters, who did not introduce herself to Suzanne, sent Suzanne an out of the blue text the night of Suzanne's first day on family leave day, taunting Suzanne with a happy face of emoji;

**PLAINTIFF'S ORIGINAL COMPLAINT**
Glaw 2019.06.14

xi)     Wicke left Suzanne off a couple of jean pass emails, where teachers can wear jeans as an added incentive, so when Suzanne came to work everyone was in jeans and Suzanne stood out;

xii)    When Suzanne returned from family leave and asked if Suzanne's paid jeans pass could be honored, Suzanne was denied even though numerous other staff were not held to same standard;

xiii)   Wicke demoted Suzanne to a teacher Plan I for developing teachers despite Suzanne's success with students, stating Suzanne was missing two professional pevelopment hours and dismissing Suzanne's request for Suzanne's right to give discretion to the staff member (Suzanne) especially because it was Suzanne's first time and Suzanne had been on family leave and could not take Professional Development;

xiv)    Reyna often left out Suzanne's classroom accomplishments including use of technology and even manually omitted Suzanne's Goal Setting, telling Suzanne that Suzanne had not done it;

xv)     Wicke and Reyna were Suzanne' appraisers for years despite it being a conflict of interest due so; and

xvi)    Waters accused Suzanne of paranoia and raised Waters' voice at Suzanne;

h)   **the refusal to investigate complaints as to discrimination matters:**

i)   Superintendent Henry was notified of the seriousness of matters that needed investigating and stated Henry agreed the problems Suzanne brought to Henry's attention (via a union representative) needed to be addressed and the DAEP should be run with clear rules. However, Henry did nothing further as the dangerous work environment grew;

ii)   Smith asked Suzanne why Suzanne cared about certain students since such were not Suzanne's students, when Suzanne brought safety concerns to human resources;

iii)   Wicke told Smith in front of Suzanne during a human resources mediation over Suzanne's safety concerns, that the staff went crazy when the former principal left and Smith responded that change is hard and it is hard to manage adults;

iv)   Fanning and Smith met with a group representing Suzanne's grievance and agreed that safety procedures needed to be in place and staff needed to be supported, yet nothing further was heard.

v)   Suzanne is on the foregoing grievance but the union stated that human resources preferred Suzanne not being in the meeting so it would not become aggressive and Wicke wouldn't feel attacked;

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    23

vi)    Marney Collins Sims was notified several times by Suzanne's union representative of a parent being allowed to bully Suzanne due to the administration not providing proper information to the parent and the parents' advocate, yet nothing was done;

vii)    Marney Collins Sims responded to Suzanne's safety concerns and lack of student growth by accusing Suzanne of backing students into a corner and treating them all the same;

viii)    Wicke would often ignore Suzanne's emails of concern rather than investigate'

ix)    Reyna would deflect or ignore Suzanne rather than investigate concerns, sometimes stating Reyna would only focus on the positive; and

x)    Marney Collins Sims reviewed all the grievances filed by Suzanne and advised Defendant Cy-Fair on each;

i)    **making unnecessary demands on employment requirements:**

i)    Soon after Suzanne filed a police report for a student threat, Wicke changed Suzanne's conference period, and Suzanne was assigned to team teach in the room with the student who threatened me. At that time, none of the staff at this point in time had ever had to team teach;

ii)    Suzanne suffered inciting comments and taunts by other high school students who were allowed to discuss the police report as they knew ALC-W administrators would not act;

iv)   Reyna directed Suzanne to leave other students in class and go to SAC DC to teach a student who just vulgarly cursed Suzanne out and then attempted to pop a pimple on Suzanne (SAC was part of Defendant Cy-Fair's program to keep students who were not read to return to Home Campus or who committed offenses of violent or serious nature.   Principal Wicke disassembled SAC);

v)   Reyna falsely accused Suzanne  of not having lesson plans;

vi)   Reyna falsely accused Suzanne of not completing Suzanne's yearly Goal Setting;

vii)   Reyna falsely accused Suzanne of not knowing district technology;

viii)   Chrissy Reyna accused Suzanne of wasting class time by showing two new students how to use the dictionary (which is allowed on STAAR testing);

ix)   Reyna regularly and without explanation changed student schedules catching Suzanne off guard;

x)    Chrissy Reyna responded to my concerns by immediately shutting me down, held up her hand and told me "I can't make you happy;"

xi)   Reyna insisted Suzanne teach a block English class despite it being a campus administrators decision to not strain the already at-risk students;

xii)   Wicke Suzanne SSI (extra student teaching) during my conference period;

xiii)   Reyna accused Suzanne of not having an updated syllabus and became visibly upset when Suzanne showed Reyna Suzanne did;

xiv)   Reyna assigned homework to teachers to read articles and attend mini meetings during conference times, but did not hold all staff accountable to complete after Suzanne resigned; and

xv)   Robinson repeatedly told me my concerns were all speculation;

**j)   denied the right and opportunity to perform her employment activities as Plaintiff Suzanne deemed fit and appropriate:**

i)   Defendant Cy-Fair refused to follow written protocol including dress code and habitual tardiest challenging Suzanne's documentation of same;

ii)   Defendant Cy-Fair refused to intervene in gang activity Suzanne reported and Fanning stated that this isn't the 90's, we don't have gangs, all our students are placed for marijuana;

iii)   Waters told Suzanne to use my best, ignoring ears to handle discipline;

iv)   Robinson told the Counselor Carolyn Draper, in earshot of Suzanne and students, that Suzanne provoked the students so Suzanne needed to escort some while I was doing mandatory hall duty;

v)   Waters made an announcement in the cafeteria to students during their lunch break that Waters is getting too many calls from Room 107, 106, 105

which is my room (107) and the area Suzanne monitored during hall duty;

vi)    Wicke tossed out all the hard-work and after work hours' time Suzanne put into the Discipline Committee established by ALC-W and human resources as a means to resolve consistency;

vii)   Wicke would often interrupt Suzanne in staff meetings when Suzanne addressed staff's ability to document behavior with "there are safeguards for that" but never supporting any;

viii)  Wicke failed on numerous occasion to document student cursing Suzanne out or gang signs thereby limiting Suzanne's ability to do so and often sent Suzanne aggressive students;

ix)    Reyna told Suzanne (in regard to Suzanne's concerns of an escalating student and aggressive emails from a parent) "that's because no-one else sees it as a problem, you're the only one" (video footage cleared Suzanne);

x)     Waters enabled an angry parent to spit scream in Suzanne's face, point in Suzanne's face, insult Susanne in front of a student because Waters would not relay valuable information.

xi)    Three days after Suzanne wrote to Wicke of the attack, Wicke and Waters gave Suzanne a write-up stating someone had written letter complaining of Suzanne, yet there never was any such complaint letter;

**PLAINTIFF'S ORIGINAL COMPLAINT**                       27

xii)   Wicke showed Suzanne and told Suzanne that Wicke took Suzanne's SPED binder (with extremely confidential information in it) home and "went through it with a fine tooth comb, found nothing, once again, and stated I guess you're perfect." No other staff member had ever heard or had their SPED binders taken home;

xiii)   Robinson told Suzanne "the boss said there is no more continuum so there its gone" when I asked why we were not supporting written policy;

xiv)   When Rothman documented behavior, Reyna allowed a parent to bully Suzanne for a month rather than share the facts which showed that it was actually Reyna who the student committed the offense against;

xv)   Wicke sent and expected me to allow volatile students into class disrupting and halting instruction of other students; and

xvi)   Suzanne was made to do mandatory hall duty, but when Suzanne documented severe student behavior, Suzanne was verbally reprimanded;

k)   **continued threats of terminations:**

i)   Marney Sims threatened to move Suzanne to another campus without warning the Sunday before teachers returned to the new school year;

ii)   Marney Sims told Suzanne's union representative that Sims does not know who Suzanne thinks she is, but the sun doesn't rise and set with Suzanne and no more complaints can come from Suzanne,

    iii)    Wicke and Chrissy switched Suzanne's assignment of ten years to teach three new assignments; and

    iv)    Suzanne was constantly tagged team with the one variable of Wicke being present;

    v)    Marney Sims accused Suzanne of backing kids in a corner and treating them all the same;

**l)**    **Disabilities:**

    i)    Hamilton screamed at Suzanne to sit down even though Suzanne was in pain;

    ii)    Hamilton interrupted Suzanne's instruction by walking in front of me as I was teaching asked, "Where are you from?;"

    iii)    Hamilton interrupted my instruction by walking in front of me as I was teaching and started talking to students;

    iv)    Wicke and Reyna made Suzanne move classrooms to the end of the farthest hall making Suzanne's walk to the teacher lounge, book room, etc. more arduous'

    v)    Wicke ordered that the classroom next to me (a math classroom of 10 years and highly equipped) be used as a storage room taking away another means of assistance close enough should Suzanne need it;

vi)     Wicke and Corbett denied my use of family leave knowing that medical documentation if not addressed could only exacerbate Suzanne's prior disability;

vii)    Wicke assigned Suzanne to help soach the SAC students in P.E. which is unheard of for an academic and disabled teacher to do especially with higher offenders;

viii)   Smith scolded me by saying that my prior career as an officer and author who advocates for literacy did not matter;

ix)      Robinson and Waters ignored Suzanne's cries for help to stop a fight between two males who were bigger than Suzanne; even though Suzanne had raised her hand, shouted, called the front office and heard the front office notify them via radio;

**m)     exercise of First Amendment Rights:**

i)      Wicke told staff (referring to Suzanne and a handful of colleagues), "we aren't going back 7 or 8  years ago if you don't feel safe, is time you look elsewhere;"

ii)     Disgruntled felons and gang members were allowed in the building and staff who spoke up were intimidated;

iii)    Wicke referred to original staff as "You people" and told us not to talk to each other;

iv)     Hamilton would tell staff (including Suzanne) that she "doesn't want Suzanne to go talk to Suzanne's friends and what we spoke about stays in here do you understand;"

     v)      Wicke often refused to call police out to take a report of serious incidents;

     vi)     Wicke sent a letter to union president stating a union representative had violated policy and was not allowed back, said union representative being the same the union representative who initially notified Dr. Henry of the unsafe work and learning environment;

     vii)    Wicke and human resources gave a verbal directive to the other DAEP programs within Defendant Cy-Fair to not communicate with the ALC -West staff;

     viii)   Defendant Cy-Fair ignored terrified staff whose lives were being threatened and Suzanne had to call police for them to respond to the campus ;

     ix)     Wicke mocked Suzanne in front of all staff and then apologized to Suzanne privately, which Wicke did habitually; and

     x)      Suzanne reported a student who threatened to shoot up the campus and severe bullying and asked if police were called but was given the run around by Wicke;

**n)     Retaliation separate and not previously referenced:**

     i)      After Suzanne's union president spoke to human resources about Suzanne's concerns, Suzanne was advised to "RUN;"

**PLAINTIFF'S ORIGINAL COMPLAINT**               31

ii)     Suzanne was targeted with trumped up write ups and false accusation with no evidence and Suzanne's rebuttals went ignored;

iii)    Sims attempted to transfer Suzanne without warning and the day before school started;

iv)     Wicke isolated Suzanne and gave Suzanne three new contents despite her FMLA;

v)      Waters responded to Suzanne's concerns by stating, "your email sounds accusatory" and then Waters and Reyna accused Suzanne of having the highest call volume, the highest number of referrals, stating that other staff are not adults and for not having relationships with Suzanne's students;

vi)     Waters and Reyna bludgeoned Suzanne with accusations that Suzanne needed outside behavior management support;

vii)    Robinson told Suzanne that Suzanne was the biggest fish they (Defendant Cy-Fair) wanted to catch;

viii)   Reyna told staff not to go to Suzanne's room to assist Suzanne (even when the help needed was for a special education student;

ix)     Robinson (stated publically in the hall where staff members could hear) in front of a highly volatile gang member, "I don't want him to get agitated by Ms. Rothman…" Within days, this student threatened staff and was arrested; and

**PLAINTIFF'S ORIGINAL COMPLAINT**                                            32

      x)    Most verbal or written reprimands were given to Suzanne at key times, i.e. Mother's Day Weekend, or, while Suzanne was spending most of Suzanne's off-time trying to save Suzanne's job or advocating for students via thorough, lengthy documentation.

**o)    FMLA:**

      i)    From the first request to the last request Suzanne made for family medical leave ("FMLA") Defendant Cy-Fair has delayed approval of Suzanne's FMLA;

      ii)    Suzanne's primary care doctor stated that she has never seen anything like Defendant Cy-Fair (as to the handling of Suzanne's FMLA request) and that it is like talking to a brick wall; and

      iii)    The first day Suzanne was out on FMLA, Reyna called staff to an emergency meeting for the purposes of telling the staff that "Rothman is out indefinitely" which was untrue;

      iv)    and they should never have known I was on FMLA; and

      v)    Reyna's  public and announcement of Suzanne's FMLA to the staff improper.

For the purposes hereof, the foregoing shall be collectively referred to as the "District's Civil Rights Violations."

**PLAINTIFF'S ORIGINAL COMPLAINT**               33

30.     In 2017, Suzanne's body had reached its limits, as Suzanne suffered numerous emergency doctors rooms visits and was forced to use Suzanne's personal time when in the years prior, Suzanne never exceeded her allotted bank of absences.

31.     Finally, as a result of the District's Civil Rights Violations, Plaintiff Suzanne was left with no other choice by to resign, which was it. Without the District's Civil Rights Violations, Suzanne would still be teaching now and for at least another sixteen years.

32.     As a direct result of the District's Civil Rights Violations, Plaintiff Suzanne's mental health has deteriorated and is likely to continue to deteriorate, including but not being limited to Suzanne being unable to maintain or establish new personal relationships, impaired Suzanne's relationships with Suzanne's children, and her husband and family.

33.     Plaintiff Suzanne suffers continuous daily battles with depression and anxiety attacks. Suzanne suffers from TMJ.  Suzanne had to get glasses for extreme blurred vision and suffered from extreme lack of sleep and focus, and injuries resulting from the pure dread of the districts torment. Suzanne suffered weekly cuts and bruises from this disorientation.  Suzanne quit working on personal hobbies as she became dangerously absentminded often unable to drive.

34.     Extreme stress caused Plaintiff Suzanne to bleed excessively and abnormally.  Suzanne sufferers from weak legs, feeling of fainting and stomach pains often times not eating for days or overeating for others.  Suzanne suffers from trouble breathing.  All that Suzanne held dearly was held hostage as Suzanne was on trial each day having to either defend herself or turn over all she worked for.

35.     Plaintiff Suzanne engaged in destructive spending to deter from the pain and eventually sought psychiatric help.  Suzanne also employed the use of a puppy to help therapeutically.

36.     Plaintiff Suzanne has also suffered severe physical, emotional, and economic harm as a result of the District's Civil Rights Violations including increased medical treatments and costs, therapy, increased medication being taken to battle Suzanne's Disabilities cause by the District's Civil Rights Violations.

37.     Plaintiff Suzanne has already suffered economic harm of lost pay and medical expenses of thousands of dollars.

38.     Further, with Plaintiff Suzanne's Disabilities, caused by the Civil Rights Violations, Suzanne's ability to ever return to work is at risk.

39.     Defendant Cy-Fair's Civil Rights Violations were committed intentionally, with malice, and intentional indifference towards Plaintiff Suzanne.

40.     Plaintiff Suzanne's contract with Defendant Cy-Fair is deemed by Texas law to create a property interest held by Suzanne.

41.     As described, Defendant Cy-Fair's Civil Rights Violations targeted at Plaintiff Suzanne was implemented under the color of law, by the referenced employees and respective agents of Defendant Cy-Fair, who were implementing the policies, practices, and procedures of Defendant Cy-Fair.

42.     If such policies, practices, and procedures are not, in fact written, then Defendant Cy-Fair and its respective agents were implementing the policies, practices, and procedures in accord with the customs and practices of the policy makers of each Defendant when committing the Civil Rights Violations targeted at Plaintiff Suzanne.

43.     As referenced, the Civil Rights Violations targeted at Plaintiff Suzanne was supervised and conducted by administrators and representatives of Defendant Cy-Fair, while such persons were performing their assigned Cy-Fair duties, as prescribed by the Superintendent of Defendant Cy-Fair and the Cy-Fair Board.

44.     Based on the unions reporting to Defendant Cy-Fair's Superintendent and Board of the concerns raised by Plaintiff Suzanne, Defendant Cy-Fair and its Board were aware of the Civil Rights Violations, yet did nothing, notwithstanding that the Board is the ultimate maker of policies for Defendant Cy-Fair, thereby condoning the Civil Rights Violations against Suzanne.

45.     In fact, the Board of Defendant Cy-Fair is well aware of the failures of Defendant Cy-Fair as outlined in the following initiatives prepared by, and for, the Board:

a.      Cypress-Fairbanks Independent School District Improvement Plan 2018 2019 Improvement Plan; and

b.      Board Monitoring System 2018-2019 School Year.

46.     On December 12, 2018, Plaintiff Suzanne met with and lodged Suzanne's various complaints of discrimination (based on age, disabilities, gender, ethnicity, retaliation, and the overall creation of a hostile work environment by Defendant Cy-Fair because of Suzanne's age, disabilities, gender, ethnicity, and Suzanne's exercise of Suzanne's rights to express complaints and seek better working conditions for herself and others [hereafter, "Alleged Discrimination"]) with the U.S. Equal Employment Opportunity Commission ("EEOC").

**PLAINTIFF'S ORIGINAL COMPLAINT**                                            37

47.     Thereafter, on December 21, 2018, Plaintiff Suzanne received a Dismissal and Notice of Rights letter ("Right to Sue Letter") from the EEOC authorizing Suzanne to file a private cause of action against Defendant Cy-Fair (with regards to the Alleged Discrimination) on or before ninety days after December 21, 2018. Plaintiff had originally filed for relief in accord with the Right to Sue Letter on March 19, 2019, which tolled the time period under the Right to Sue Letter.  Said filing was voluntarily dismissed on June 14, 2019, and the filing herein is within the applicable time period created by the Right to Sue Letter. A true and correct copy of such letter is attached hereto as Exhibit "A" and incorporated herein for all purposes.

48.     As a result of Defendant Cy-Fair's Civil Rights Violations targeted at Plaintiff Suzanne, Suzanne was forced to engage an attorney and pursue this action to redress such wrongs.

49.     All conditions precedent to Plaintiff Suzanne bringing these claims have been met.

### E.  PLAINTIFF'S CAUSES OF ACTION

50.     Plaintiff Suzanne incorporates by reference the facts set forth in foregoing ARTICLE D: GENERAL BACKGROUND hereof.

## COUNT ONE: ADEA VIOLATIONS

51.    As set forth, certain acts and omissions of the Civil Rights Violations were inflicted upon Plaintiff Suzanne as a result of Suzanne being an employee of Defendant Cy-Fair over the age of 40.

52.    The referenced acts and omissions of the Civil Rights Violations inflicted upon Plaintiff Suzanne as a result of Suzanne being an employee of Defendant Cy-Fair over the age of 40 are violations by Defendant Cy-Fair of the ADEA.

53.    Plaintiff Suzanne has suffered actual and consequential damages as a result of such violations by Defendant Cy-Fair of the ADEA, for which Plaintiff Suzanne now sues for relief.

## COUNT TWO: ADA VIOLATIONS

54.    As set forth, certain acts and omissions of the Civil Rights Violations were inflicted upon Plaintiff Suzanne as a result of Suzanne being an employee (of Defendant Cy-Fair) suffering under Suzanne's Disabilities.

55.    The referenced acts and omissions of the Civil Rights Violations inflicted upon Plaintiff Suzanne as a result of Suzanne being an employee (of Defendant Cy-Fair) suffering under Suzanne's Disabilities were in violation of

Sections I and II of the ADA.

56.     Plaintiff Suzanne has suffered actual and consequential damages as a result of such violations by Defendant Cy-Fair of the ADA, for which Plaintiff Suzanne now sues for relief.

## COUNT THREE: TITLE VII-ETHNICITY

57.     As set forth, certain acts and omissions of the Civil Rights Violations were inflicted upon Plaintiff Suzanne as a result of Suzanne being an Hispanic employee of Defendant Cy-Fair.

58.     The referenced acts and omissions of the Civil Rights Violations inflicted upon Plaintiff Suzanne as a result of Suzanne being an Hispanic employee of Defendant Cy-Fair were in violation of Title VII.

59.     Plaintiff Suzanne has suffered actual and consequential damages as a result of such Title VII violations by Defendant Cy-Fair, for which Plaintiff Suzanne now sues for relief.

## COUNT FOUR: TITLE VII-GENDER

60.     As set forth, certain acts and omissions of the Civil Rights Violations were inflicted upon Plaintiff Suzanne as a result of Suzanne being a female employee of Defendant Cy-Fair.

**PLAINTIFF'S ORIGINAL COMPLAINT**                                                40

61.     The referenced acts and omissions of the Civil Rights Violations inflicted upon Plaintiff Suzanne as a result of Suzanne being a female employee of Defendant Cy-Fair were in violation of Title VII.

62.     Plaintiff Suzanne has suffered actual and consequential damages as a result of such Title VII violations by Defendant Cy-Fair, for which Plaintiff Suzanne now sues for relief.

## COUNT FIVE: TITLE VII-<br>RETALIATION AND HOSTILE WORK ENVIRONMENT

63.     As set forth, certain acts and omissions of the Civil Rights Violations were inflicted upon Plaintiff Suzanne in retaliation of Suzanne filing grievances and complaints with Defendant Cy-Fair, as well as Suzanne speaking openly about the Civil Rights Violations and poor working conditions at Defendant Cy-Fair.

64.     Further, certain acts and omissions of the Civil Rights Violations were inflicted upon Plaintiff Suzanne in retaliation of Suzanne being a female of Hispanic heritage while employed by Defendant Cy-Fair.

65.     The referenced acts and omissions of the Civil Rights Violations inflicted upon Plaintiff Suzanne as a result of (a) Suzanne filing grievances and complaints with Defendant Cy-Fair, (b) Suzanne speaking openly about the Civil

Rights Violations and poor working conditions at Defendant Cy-Fair, and (c) as a result of Suzanne being a female of Hispanic heritage while employed by Defendant Cy-Fair created a hostile work environment towards Suzanne in violation of Title VII.

66.    Plaintiff Suzanne has suffered actual and consequential damages as a result of such Title VII violations by Defendant Cy-Fair, for which Plaintiff Suzanne now sues for relief.

## COUNT SIX: TITLE VI VIOLATIONS

67.    As an entity receiving grants and funds from the United States, Defendant Cy-Fair is also governed by Title VI.

68.    Because Defendant Cy-Fair is also governed by Title VI, the foregoing violations of Title VII are also violations under Title VI, for Suzanne was denied her substantive and procedural due process, and, equal protection rights prescribed by the 14th Amendment to the United States Constitution, as well as her First Amendment rights set forth in the United State Constitution.

69.    Said referenced acts and omissions are in violation of Title VI.

70.    Plaintiff Suzanne has suffered actual and consequential damages as a result of such Title VI violations by Defendant Cy-Fair, for which Plaintiff Suzanne now sues for relief.

## COUNT SEVEN: VIOLATION OF THE FMLA

71.     Defendant Cy-Fair's Civil Rights Violations of Plaintiff Suzanne denied Suzanne the protections of Suzanne's employment, including without limitation paid medical leave, as required by the FMLA.

72.     Defendant Cy-Fair's refusal to do so is a violation of the FMLA.

73.     Plaintiff Suzanne has suffered actual and  consequential damages as a direct and proximate result of Defendant Cy-Fair's violations of the FMLA, for which Suzanne now sues.

## COUNT EIGHT: SECTION 504 VIOLATIONS

74.     As a public school system owned and operated by the State of Texas as a political subdivision that receives grants and other funding from the United States, Defendant Cy-Fair falls under the jurisdiction and requirements of Section 504.

75.     As mandated by Section 504, Defendant Cy-Fair is prohibited from discriminating against students and its employees having been diagnosed with various disabilities.

76.     Plaintiff Suzanne's Disabilities qualify as disabilities covered by Section 504, and Defendant Cy-Fair's Civil Rights Violations against Suzanne are direct violations of Section 504.

77.     Defendant Cy-Fair's Civil Rights Violations against Plaintiff Suzanne in violation of Section 504 have caused Plaintiff Suzanne to suffer a loss of benefits and created economic losses, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Suzanne now sues in accord with Section 504.

78.     Defendant Cy-Fair's Civil Rights Violations against Plaintiff Suzanne in violation of Section 504 have caused Plaintiff Suzanne to suffer mental and emotional distress and damages, including all actual, consequential, continuing, and future compensatory damages, for which Plaintiff Suzanne now sues in accord with Section 504.

## COUNT NINE: SECTION 1983

79.     Section 1983 of Title 42 of the United States Code provides, in part:

> "Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, and citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the part injured in an

action at law, suit in equity, or other proper
proceeding for redress…"

80.    The foregoing described acts and omissions of Defendant Cy-Fair
which violated the ADEA, the ADA, Title VII, Title VI, the FMLA, and Section
504 also constitute violations of Section 1983, for such acts were made under the
color of law by designated persons of authority implementing their assigned duties
and responsibilities of Defendant Cy-Fair.

82.    Under the First Amendment to the Constitution of the United States,
Plaintiff Suzanne (as an employee of Defendant Cy-Fair) has the right to express,
both verbally and in writing, Suzanne's  dissatisfaction with Defendant Cy-Fair.

83.    Under the Fourteenth Amendment to the Constitution of the United
States, Plaintiff Suzanne has the right to substantive and procedural due process,
and, equal protection rights prescribed by the 14th Amendment to the United States
Constitution, as well as her First Amendment rights set forth in the United State
Constitution ("Constitutional Protections").

84.    Defendant Cy-Fair's Civil Rights Violations targeted at Plaintiff
Suzanne were made under the color of law by designated persons of authority

implementing their assigned duties and responsibilities of Defendant Cy-Fair, thereby violating Suzanne's Constitutional Protection, in violation of Section 1983.

85.     Plaintiff Suzanne has suffered actual and consequential damages as a result of such violations by Defendant Cy-Fair of Section 1983, for which Plaintiff Suzanne now sues for relief.

86.     Plaintiff Suzanne also seeks equitable relief to which Plaintiff Suzanne is entitled by Section 1983, including but not being limited to:

(a)     requiring Defendant Cy-Fair to cease and desist from any further Civil Rights Violations against Plaintiff Suzanne;

(b)     expungement from the files of Defendant Cy-Fair of all materials reflecting negatively on Plaintiff Suzanne;

(c)     requiring Defendant Cy-Fair to cease and desist from any further Civil Rights Violations of Defendant's teachers and students with Defendant's DAEP; and

(d)     the inclusion of credit years into Plaintiff Suzanne's Texas Teacher's Retirement System for all the years lost as a result Defendant Cy-Fair's Civil Rights Violations.

## <u>COUNT TEN: VIOLATIONS OF THE TEXAS CONSTITUTION</u>

87.     As a public school district locally operating as a political subdivision in the State of Texas, Defendant Cy-Fair's actions are also subject to scrutiny of protections created by the Texas Constitution.

88.     Defendant Cy-Fair's Civil Rights Violations against Plaintiff Suzanne were committed under the color of law and resulted in the violation of Plaintiff Suzanne's' rights under the Constitution of the State of Texas.

89.     Specifically, Defendant Cy-Fair's Civil Rights Violations committed towards Suzanne were committed under the color of law and resulted in the violation of Plaintiff Suzanne's rights under:

   (a)     the procedural due process requirements of the Texas Constitution found in Article 1, Section 19;

   (b)     the substantive due process requirements of the Texas Constitution found in Article 1, Section 19;

   (c)     the equal protection requirements of the Texas Constitution found in Article I, Section 3; and

   (d)     the freedom of speech requirements of the Texas Constitution found in Article I, Section 8.

Hereafter, the foregoing shall be collectively referred to as "Violations of the Texas Constitution."

90.     Defendant Cy-Fair's Violations of the Texas Constitution as to Plaintiff Suzanne have caused Plaintiff Suzanne to suffer a loss of benefits and created economic losses.

91. Defendant Cy-Fair's Violations of the Texas Constitution as to Plaintiff Suzanne have caused Plaintiff Suzanne to suffer mental and emotional distress and damages.

92. Although Plaintiff Suzanne, as a private party living in the State of Texas, has no standing to seek monetary damages for the Defendant Cy-Fair's Violations of the Texas Constitution as to Plaintiff Suzanne, Plaintiff Suzanne does seek the equitable relief to which Plaintiff Suzanne is entitled by Texas jurisprudence, including but not being limited to:

(a) requiring Defendant Cy-Fair to cease and desist from any further Civil Rights Violations against Plaintiff Suzanne;

(b) expungement from the files of Defendant Cy-Fair of all materials reflecting negatively on Plaintiff Suzanne;

(c) requiring Defendant Cy-Fair to cease and desist from any further Civil Rights Violations of Defendant's teachers and students with Defendant's DAEP; and

(d) the inclusion of credit years into Plaintiff Suzanne's Texas Teacher's Retirement System for all the years lost as a result Defendant Cy-Fair's Civil Rights Violations.

## COUNT ELEVEN: EXEMPLARY DAMAGES

93. Defendant Cy-Fair's foregoing described violations of the Federal Laws as to Plaintiff Suzanne were pursued with malice, reckless disregard, and

intentional indifference with regard to Suzanne, thereby entitling Plaintiff to punitive damages, for which Plaintiff Suzanne now sues.

## COUNT TWELVE: POST JUDGMENT INTEREST

94.    Plaintiff Suzanne also requests post judgment interest as may be allowed by applicable law.

## COUNT THIRTEEN: ATTORNEYS' FEES

95.    Plaintiff Suzanne should be awarded her reasonable and necessary attorneys' fees incurred in relation to the foregoing as allowed by applicable law.

## F.    REQUEST FOR JURY

96.    Plaintiff Suzanne has already requested that a jury be empaneled, and, that the foregoing causes of actions and requests for relief be presented to such jury for resolution.

## G .   PRAYER FOR RELIEF

WHEREFORE, Plaintiff Suzanne Rothman prays that summons be issued and served on Defendant; upon final trial hereof, that judgment be entered in favor of Plaintiff Suzanne for the actual, consequential, and exemplary damages set forth herein including post judgment interest; that Plaintiff Suzanne be reimbursed her reasonable and necessary attorneys' fees required to bring this matter; that all costs

of Court be taxed against Defendant; and that Plaintiff Suzanne have such further and other relief, general and special, both at law or in equity, to which she may show herself to be justly entitled.

Respectfully submitted,

Gorman Law Firm, pllc

By: _____

Terry P Gorman, Esq.
Texas Bar No. 08218200
tgorman@school-law.co
901 Mopac Expressway South, Suite 300
Austin, Texas 78746
Telephone: (512)-980-4556 (tpg Direct)
Telecopier: (512) 597-1455
**COUNSEL FOR PLAINTIFF**
**SUZANNE ROTHMAN**

**PLAINTIFF'S ORIGINAL COMPLAINT**                                    50

Glaw 2019.06.14

# EXHIBIT "A"

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: Ms. Suzanne Rothman<br>PO BOX 53<br>Cypress, TX. 77410 | From: Houston District Office<br>Mickey Leland Building<br>1919 Smith Street, 7th Floor<br>Houston, TX 77002 |
|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | |
|---|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 460-2019-00994 | Ronnette Ramirez,<br>Investigator | (713) 651-4958 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS** of your receipt of this notice; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

Rayford O. Irvin,
District Director

12/21/18
(Date Mailed)

Enclosures(s)

cc:   Ms. Bridgette Collins, HR Rep.
       Cypress Fairbanks ISD
       10300 Jones Rd.
       Houston, TX. 77065

Mr. Lowell Keig, Exec. Dir.
TWC Civil Rights Div.
101 East 15th Street Room 144-T
Austin, TX. 78778

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.
If you also plan to sue claiming violations of State law, please be aware that time limits and other
provisions of State law may be shorter or more limited than those described below.)*

PRIVATE SUIT RIGHTS    --    **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

PRIVATE SUIT RIGHTS    --    **Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years)** before you file suit may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit before 7/1/10 – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

ATTORNEY REPRESENTATION    --    **Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

ATTORNEY REFERRAL AND EEOC ASSISTANCE    --    **All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice**.  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*